LORETTA JONES AND MICHAEL JONES, Plaintiffs v. GMRI, INC. and RICH PRODUCTS CORPORATION, INC. Defendants

No. COA00-831

(Filed 3 July 2001)

**1. Products Liability— sealed container—metal object in meatball**

The trial court did not err in a products liability action arising from an alleged metal object in a meatball by submitting to the jury the N.C.G.S. § 99-2(a) defense that the seller was afforded no reasonable opportunity to inspect the product.

JONES v. GMRI, INC.

[144 N.C. App. 558 (2001)]

Defendant presented evidence that it removes whole meatballs from sealed bags, defrosts, and reheats them; that it does not slice or cut into the meatballs; that it probes some of the meatballs with a thermometer to check the temperature; and that plaintiff cut the meatball into eight pieces prior to eating it. Although it is possible that the restaurant appeared to the injured plaintiff to be the maker of the meatball and therefore liable, plaintiff presented no evidence on this point.

2. **Appeal and Error— preservation of issues—motion for a new trial**

Plaintiffs in a products liability action did not preserve the issue of spoliation of evidence where the argument was not made before they filed their motion for judgment notwithstanding the verdict and/or a new trial. A motion for j.n.o.v. is technically only a renewal of the motion for a directed verdict and a movant cannot assert grounds not included in the motion for a directed verdict.

3. **Discovery— refusal to produce documents—spoliation of evidence**

The trial court did not err by denying a motion for a new trial in a products liability action where the motion raised the issue of spoliation of evidence in the context of defendant failing to produce documents after being ordered by the court to do so. Whether to impose sanctions for failing to obey an order to provide discovery is within the discretion of the trial court and plaintiff has not shown an abuse of discretion.

4. **Food— negligence—metal in meatball**

The trial court did not err by granting a directed verdict for defendant on a negligence claim arising from an injury suffered when one plaintiff bit into a metal object in a meatball where plaintiffs offered no evidence showing breach of a duty or standard of care. The doctrine of res ipsa loquitur does not apply in a case involving an injury from the ingestion of an adulterated food product and there was no negligence per se under the North Carolina Pure Food, Drug, and Cosmetic Act because the Act does not provide a standard by which to comply with the general duty not to sell adulterated food.

Appeal by plaintiffs from judgment entered 7 January 2000 and order entered 28 March 2000 by Judge James E. Lanning in

JONES v. GMRI, INC.

[144 N.C. App. 558 (2001)]

Mecklenburg County Superior Court. Heard in the Court of Appeals 17 May 2001.

*Crews & Klein, P.C., by Paul I. Klein and Katherine Freeman, for plaintiff-appellants.*

*Dean & Gibson, L.L.P., by Christopher J. Culp and William T. Stetzer, for defendant-appellees.*

MARTIN, Judge.

On 11 November 1994, Loretta Jones was injured when she bit into a meatball at an Olive Garden Restaurant owned by GMRI, Inc. ("defendant") in Pineville, North Carolina. Plaintiffs filed a complaint on 10 November 1997 against defendant and Rich Products Corporation, which allegedly supplied or manufactured the meatball, asserting claims of negligence, breach of implied warranty, and loss of consortium. Defendant answered, asserting as a defense to the implied warranty claim that it did not have a reasonable opportunity to inspect the meatball in a way that would have discovered the defect, as provided by G.S. § 99B-2(a).

During discovery, plaintiffs requested that defendant produce a copy of the restaurant's report investigating plaintiffs' incident, and documents showing proof that the meatball was supplied by Rich Products. Defendant did not produce these documents. Plaintiffs' motion to compel the incident report was granted by order dated 5 April 1999. Defendant contended that due to the three year time lapse between the date of the incident and the filing of the lawsuit, it no longer had the record to produce. Plaintiffs filed a voluntary dismissal as to their claim against Rich Products on 21 October 1999.

At the trial of plaintiffs' claim against defendant, plaintiffs presented the testimony of a friend who was present at the restaurant on the day of the incident, themselves, and three physicians. Plaintiffs' evidence tended to show that when plaintiff Loretta Jones attempted to take her first bite of the meatball, she bit down into an unidentified metal object. At that time, she experienced an "incredible stabbing pain in [her] tooth and [her] jaw," caused by a broken tooth. Because she was startled, she "sucked in and immediately sucked down the food" and the object. On cross-examination, plaintiff testified that she cut the meatball into eight pieces prior to taking the bite, and that she did not detect any foreign object in the meatball

JONES v. GMRI, INC.

[144 N.C. App. 558 (2001)]

at that time. At the close of plaintiffs' evidence, the trial court granted defendant's motion for directed verdict as to the negligence claim.

Defendant presented evidence tending to show that most of the restaurant's meatballs come into the store frozen and in sealed bags. The restaurant does a visual inspection of the sealed bags of meatballs, and sends back those that do not meet the inspection. The meatballs are put into the freezer at the restaurant until needed, then put into a plastic holding container and placed in a refrigerator. The meatballs, which are slightly larger than a golf ball, are then mixed with a tomato sauce, heated, and served whole. Restaurant personnel testified that they do not poke or slice the meatballs, other than to check the temperature with a probe.

At the close of all the evidence, defendant renewed an earlier motion for a directed verdict as to the implied warranty claim based on a G.S. § 99B-2(a) defense. The court denied the motion, and also denied plaintiffs' motion for a directed verdict as to the defense. The jury returned a verdict finding that defendant breached an implied warranty of merchantability to plaintiff, but that defendant did not have a reasonable opportunity to inspect the food in a way that would have revealed the claimed defect. Therefore, the jury awarded plaintiffs no recovery. Plaintiffs' motions for judgment notwithstanding the verdict or, in the alternative, for a new trial were denied and judgment was entered on the verdict. Plaintiffs appeal from the judgment and the order denying their post-trial motions.

I.

[1] Plaintiffs first assign error to the trial court's submission of the G.S. § 99B-2(a) defense to the jury. Plaintiffs argue this defense applies only to cases where the product is in a sealed container; they contend the defense is inapposite in this case because the meatballs were taken out of the sealed container by defendant.

In interpreting a statute, we must begin with the plain meaning of the words. *Sharpe v. Worland*, 137 N.C. App. 82, 527 S.E.2d 75, *disc. review denied*, 352 N.C. 150, 544 S.E.2d 228 (2000). When the words are unambiguous, our analysis ends there. *Id.* G.S. § 99B-2(a) provides:

No product liability action, except an action for breach of express warranty, shall be commenced or maintained against any seller when the product was acquired and sold by the seller in a

sealed container **or when the product was acquired and sold by the seller under circumstances in which the seller was afforded no reasonable opportunity to inspect** the product in such a manner that would have or should have, in the exercise of reasonable care, revealed the existence of the condition complained of, unless the seller damaged or mishandled the product while in his possession (emphasis added).

The plain meaning of the words of this statute are clear; it applies in situations when "the product was acquired and sold by the seller in a sealed container or when the product was acquired and sold by the seller under circumstances in which the seller was afforded no reasonable opportunity to inspect the product . . . ." (emphasis added). Therefore, we cannot agree with plaintiffs' argument that the defense does not apply to the case before us because the meatballs were not kept in a sealed container.

Plaintiffs next argue that the G.S. § 99B-2 defense should not have been submitted to the jury because defendant failed to offer sufficient evidence to carry its burden of proof on the issue. Specifically, plaintiffs contend that defendant failed to present evidence that it lacked the opportunity to inspect the meatball. The burden of proof of an affirmative defense is on the defendant. *Redding v. Shelton's Harley Davidson, Inc.*, 139 N.C. App. 816, 534 S.E.2d 656 (2000), *disc. review denied*, 353 N.C. 380, 546 S.E.2d 606 (2001). At issue, per the language of the statute, is whether "the seller was afforded no reasonable opportunity to inspect the product in such a manner that would have or should have, in the exercise of reasonable care, revealed the existence of the condition complained of . . . ." Defendant presented the following evidence on this issue: (1) the restaurant removes whole, already formed, meatballs from the sealed bags, defrosts, and reheats them, (2) the restaurant does not slice or cut into the meatballs because that would alter the nature of the dish, but (3) the restaurant does probe some of the meatballs with a thermometer to check the temperature. The evidence also showed that plaintiff cut the meatball into eight pieces prior to eating it and did not discover the object. Defendant argues that this evidence is sufficient for a jury to conclude that the restaurant lacked a reasonable opportunity to inspect the meatball in such a way that the restaurant could have found the alleged defect. We agree.

"If a party contends that certain acts or omissions constitute a . . . defense against the other party, the trial court must submit the

issue if there is evidence which, when viewed in the light most favorable to the proponent, will support a reasonable inference of each essential element of the . . . defense asserted." *Watson v. White*, 60 N.C. App. 106, 109, 298 S.E.2d 174, 176, (1982), *reversed on other grounds*, 309 N.C. 498, 308 S.E.2d 268 (1983). Viewing the evidence in the light most favorable to the defense, we hold that defendant presented sufficient evidence for the trial court to submit the defense to the jury.

Finally, plaintiffs argue in their brief that *Warzynski v. Empire Comfort Systems, Inc.*, 102 N.C. App. 222, 401 S.E.2d 801 (1991), should control this case because defendant was more than a "mere conduit" of the meatballs. In *Warzynski*, this Court held that a seller is precluded from asserting a § 99B-2 defense if he "holds himself out to the public as the manufacturer of a product." *Id.* at 225, 401 S.E.2d at 803. The court reversed summary judgment in favor of Empire, the defendant seller, because a genuine issue of material fact existed as to whether Empire was the apparent manufacturer of the heaters. *Id.* The evidence in that case showed that: (1) Empire and the manufacturer shared the expenses of advertising the product; (2) Empire serviced the product; (3) the product came with an Empire warranty; (4) all of the advertising promoting the heaters referred to Empire, and did not state that Empire was not the manufacturer; and (5) there was a decal on the product which said that it was made in Spain, which is where the manufacturer was incorporated and had its principal offices. *Id.* at 228, 401 S.E.2d at 804-05.

*Warzynski* adopts § 400 of the Restatement of Torts. Comment (d) to § 400 explains that sellers will be held liable as manufacturers where they put out a chattel as their own product. This can happen "where the actor appears to be the manufacturer of the chattel" or "where the chattel appears to have been made particularly for the actor." It is quite possible that the Olive Garden in this case appeared to the injured plaintiff to be the maker of the meatball in question. However, plaintiffs presented no evidence on this point whatsoever. All of the evidence presented at trial related to the actual incident where she injured her tooth, her complaints to the restaurant, and the damages she suffered thereafter. Therefore, the denial of plaintiff's motion for judgment notwithstanding the verdict was proper. *See Neihage v. Kittrell Auto Parts, Inc.*, 41 N.C. App. 538, 255 S.E.2d 315, *disc. review denied*, 298 N.C. 298, 259 S.E.2d 914 (1979) (holding summary judgment for a defendant was proper where plaintiff did not offer any evidence that the defendant held or represented itself

out to the public as having designed or manufactured the product.)
Accordingly, this assignment of error is overruled.

II.

[2] Plaintiffs next argue that the trial court erred when it allowed the
restaurant to benefit from its alleged spoliation of evidence.
Specifically, plaintiffs argue that the § 99B-2 defense shifts the blame
for the occurrence from the seller to the manufacturer, and that
defendant has precluded plaintiffs from going forth with their claim
against the alleged manufacturer, Rich Products, by failing to pro-
duce requested documents regarding the purchase of the meatballs
or the investigation of the accident. Therefore, plaintiffs contend,
defendant should have been precluded from relying on the § 99B-2
defense. Plaintiffs assign error to the court's denial of their motion to
strike the § 99B-2 defense, which is in essence a motion for directed
verdict as to the defense, the court's denial of their motion for judg-
ment notwithstanding the verdict, and the court's denial of their
motion for a new trial.

Plaintiffs, however, did not make the spoliation of evidence argu-
ment before the trial court until they filed their motion for judgment
notwithstanding the verdict and/or a new trial. G.S. § 1A-1, Rule 50(a)
provides that a party must state the specific grounds for its motion
for directed verdict. In reviewing a ruling on a motion for directed
verdict on appeal, our scope of review is limited to those grounds
asserted by the moving party before the trial court. *Wilburn v.
Honeycutt*, 135 N.C. App. 373, 519 S.E.2d 774 (1999). Because plain-
tiffs failed to assert spoliation of evidence as a ground for their
motion for directed verdict as to this defense, this argument is not
properly before the court. Moreover, a "motion for judgment notwith-
standing the verdict is technically only a renewal of the motion for a
directed verdict made at the close of all the evidence, and thus [a]
movant cannot assert grounds not included in the motion for directed
verdict." *Lee v. Capitol Tire Co., Inc.*, 40 N.C. App. 150, 156, 252
S.E.2d 252, 256-57, *disc. review denied*, 297 N.C. 454, 256 S.E.2d 807
(1979) (quoting *Love v. Pressley*, 34 N.C. App. 503, 511, 239 S.E.2d
574, 580 (1977), *cert. denied*, 294 N.C. 441, 241 S.E.2d 843 (1978)).
Therefore, we hold that plaintiffs have also failed to preserve their
assignment of error as to the denial of their motion for judgment
notwithstanding the verdict.

[3] Finally, plaintiffs argue the trial court should have granted their
motion for a new trial pursuant to G.S. § 1A-1, Rule 59(a)(8) because

its denial of their motion to dismiss the § 99B-2 defense constituted an error in law. In their motion for a new trial, plaintiffs raised the spoliation of evidence argument and therefore we will consider this argument on appeal. On a motion for new trial, "where the motion involves a question of law or legal inference, our standard of review is *de novo*." *Kinsey v. Spann*, 139 N.C. App. 370, 372, 533 S.E.2d 487, 490 (2000). The essence of the doctrine of spoliation of evidence is:

> where a party fails to introduce in evidence documents that are relevant to the matter in question and within his control . . . there is a presumption, or at least an inference that the evidence withheld, if forthcoming, would injure his case.

*Yarborough v. Hughes*, 139 N.C. 199, 209, 51 S.E. 904, 907-08 (1905). This principle was recently applied by this Court in *McLain v. Taco Bell Corp.*, 137 N.C. App. 179, 527 S.E.2d 712, *disc. review denied*, 352 N.C. 357, 544 S.E.2d 563 (2000). In *McLain*, the plaintiff requested a jury instruction which provided that if the jury determined that the defendant destroyed or failed to produce corporate records in its exclusive possession, then an adverse inference would arise against the defendant that the evidence withheld would be injurious to the defense. *Id.* at 182, 527 S.E.2d at 715. This Court held that the trial court's failure to instruct the jury as requested was reversible error. *Id.* As we noted above, plaintiffs in this case did not make this argument at trial and did not request such an instruction. Instead, plaintiffs argue in their appellate brief that the court should have used this doctrine as a basis to strike the defense pursuant to Rules 26(b)(3) and 37(b)(2)(B) of the North Carolina Rules of Civil Procedure because the court ordered that defendant produce the records of the investigation and defendant failed to do so. G.S. § 1A-1, Rule 37(b)(2) provides "[i]f a party . . . fails to obey an order to provide or permit discovery . . . a judge . . . may make such orders in regard to the failure as are just." Whether to impose sanctions under this rule is within the discretion of the trial court and will not be reversed on appeal absent a showing of abuse of discretion. *Benton v. Hillcrest Foods, Inc.*, 136 N.C. App. 42, 524 S.E.2d 53 (1999). Plaintiff has not shown an abuse of discretion by the trial court in denying her motion to dismiss the defense as a sanction. Accordingly, we find no error in the trial court's denial of plaintiff's motion for a new trial.

## III.

[4] Plaintiffs' final assignment of error is to the court's directed verdict for defendant as to the negligence claim. In ruling on a motion

for directed verdict, all of the evidence must be viewed in the light most favorable to the plaintiff. *Newton v. New Hanover County Bd. of Educ.*, 342 N.C. 554, 467 S.E.2d 58 (1996). A directed verdict is rarely appropriate in a negligence action because application of the reasonably prudent person standard is usually for the jury. *Smith v. Wal-Mart Stores, Inc.*, 128 N.C. App. 282, 495 S.E.2d 149 (1998). However, it is appropriate where a plaintiff's evidence, even taken in its most favorable light, fails to "establish the elements of negligence . . . as a matter of law." *Newton*, 342 N.C. at 563, 467 S.E.2d at 65.

In order to make out a claim for negligence, the party asserting negligence must show that defendant owed a duty to the plaintiff, breached that duty, and that such breach was an actual and proximate cause of plaintiff's injuries. *Pulley v. Rex Hospital*, 326 N.C. 701, 392 S.E.2d 380 (1990). Plaintiffs argue that defendant violated the North Carolina Pure Food, Drug and Cosmetic Act and, therefore, its violation constitutes negligence *per se*. We disagree. In *Goodman v. Wenco Foods, Inc.*, 333 N.C. 1, 18, 423 S.E.2d 444, 452-53 (1992), the Supreme Court rejected this argument, noting that although the Act imposes upon a restaurant a general duty not to sell adulterated food, it does not provide a "standard by which to comply with the duty." Therefore, the Court applied ordinary negligence principles. *Id.* at 19, 423 S.E.2d at 453.

In the case before us, plaintiffs' evidence at trial established that the *feme* plaintiff was injured after biting into a piece of a meatball. She offered no evidence showing defendant's breach of a duty or standard of care. This Court has previously held that the doctrine of *res ipsa loquitur* does not apply in a case involving an injury from the ingestion of an adulterated food product. *Coffer v. Standard Brands, Inc.*, 30 N.C. App. 134, 226 S.E.2d 534 (1976) (where the plaintiff injured his teeth biting down on a shelled peanut contained in a jar of unshelled peanuts). Therefore, plaintiffs failed to establish the essential elements of negligence and the court did not err in granting a directed verdict for defendant as to the negligence claim.

No error.

Judges HUNTER and HUDSON concur.