CORNELIUS CLAWSER AND WIFE, MARLENE CLAWSER, PLAINTIFFS v. CORALEE CAMPBELL D/B/A MASON'S RUBY AND SAPPHIRE MINE, CHRISTINE L. MASON, AN INCOMPETENT PERSON, BY AND THROUGH HER GUARDIAN, CORA LEE CAMPBELL. DEFENDANTS

No. COA06-1192

(Filed 3 July 2007)

**1. Process and Service— guardian of person—failure to appoint guardian ad litem**

The trial court erred in a negligence, ultra-hazardous activity, and loss of consortium case arising out of an injury while gem mining on the incompetent defendant's real property by concluding that defendant was properly sued and served through her guardian of the person, because: (1) the legislature's decision to confer power to maintain an action on a general guardian but not a guardian of the person implies that the latter lacks such power; (2) N.C.G.S. § 1A-1, Rule 17(b)(2) requires appointment of a guardian ad litem where no general or testamentary guardian has been appointment; and (3) defendant was neither properly sued nor served in the absence of a guardian ad litem or general guardian.

**2. Discovery— failure to appear at deposition—sanctions—failure to consider lesser sanctions before striking defenses—abuse of discretion**

The trial court abused its discretion in a negligence, ultra-hazardous activity, and loss of consortium case arising out of an injury while gem mining on defendant's real property by granting plaintiffs' motion for sanctions against defendants for failure to appear at a deposition by barring defendants from denying liability and limiting the trial to damages because the trial court did not consider any lesser sanctions before striking defendants' defenses on the issue of liability.

Appeal by defendants from judgment entered 22 March 2005 and order entered 19 October 2005 by Judge Zoro Guice, Jr. in Macon County Superior Court. Heard in the Court of Appeals 27 March 2007.

*Melrose, Seago & Lay, P.A., by Randal Seago, for plaintiffs-appellees.*

*Collins & Hensley, P.A., by Robert E. Hensley, for defendants-appellants.*

MARTIN, Chief Judge.

Defendants appeal from a judgment entered upon a jury verdict in favor of the plaintiffs totaling $187,500. For the reasons below, we vacate the trial court's judgment and remand for further proceedings after appointment of a proper guardian for defendant Mason.

The evidence before the trial tended to show that defendant Mason was, on the date this action was filed, approximately 90 years old and resided in a nursing facility for the elderly in Macon County. On 11 July 2002, the Clerk of Superior Court for Macon County determined that she lacked sufficient capacity to manage her own affairs or make important decisions concerning her person, family or property, and adjudicated her incompetent. Her daughter and co-defendant, Cora Lee Campbell, was appointed guardian of her person on 1 August 2002.

Plaintiff Cornelius Clawser was injured on 12 September 2002 while gem mining on real property owned by defendant Mason. On 5 June 2003, plaintiffs filed suit against defendant Campbell, alleging negligence, ultra-hazardous activity and loss of consortium. Defendant Campbell filed an Answer on 17 August 2003 through James R. Anderson, her attorney. Plaintiffs filed an amended complaint to add defendant Mason on 21 November 2003. The Amended Complaint was served by mail addressed to "John R. Anderson . . . For Defendant Cora Lee Campbell." On 13 March 2004, Mr. Anderson filed an answer purportedly on behalf of both Ms. Mason and Ms. Campbell denying negligence but conceding personal jurisdiction over both defendants. Mr. Anderson was subsequently allowed to withdraw as counsel due to his relocation to Fayetteville. In the interim, plaintiffs had sought and obtained an entry of default on 21 January 2004.

Defendant Campbell subsequently sought to retain the services of another local attorney, Andrew Patterson. On the first day of trial, prior to jury selection, Mr. Patterson advised the court that he had not agreed to represent defendant Campbell, and did not represent her. At the same time, the trial court addressed the plaintiffs' motion for sanctions against defendants for defendant Campbell's failure to appear at a deposition. Defendant Campbell told the court that Mr. Patterson had advised her not to go to the deposition since he would not be able to appear. The trial court allowed plaintiffs' motion to strike defendants' answer with respect to liability, and to proceed to trial solely on damages. During the course of the trial, the trial court

became aware that Mr. Patterson had not returned the defendants' case file to Ms. Campbell after deciding not to represent defendants. The trial court expressed its concern over the situation, but continued the trial with defendant Campbell representing herself and her mother *pro se*. After deliberation, the jury awarded Cornelius Clawser $185,000 for his injuries, and Marlene Clawser $2,500 for loss of consortium.

On 19 August 2005, defendants filed a Motion Pursuant to Rule 60 and a Motion for Temporary and Preliminary Injunction. On 22 August 2005, the Macon County Superior Court entered an order temporarily restraining and enjoining the Macon County Sheriff's Department from taking any action to execute on the judgment. The order was periodically extended. Defendants' Rule 60 motion came for a hearing before the Macon County Superior Court on 9 September 2005. On 19 October 2005, the court ruled that defendants had failed to plead or prove any grounds for relief under Rule 60. The motion was denied. This appeal follows.

[1] We first address the issue of whether defendant Mason was properly sued and served through her Guardian of the Person. Plaintiffs argue that she was properly served and defended, and that furthermore, any objection to service has been waived by the failure of defendants to raise it as a threshold defense. Defendants contend that since defendant Mason was never served appropriately and that her Guardian of the Person was not authorized to undertake a defense on her behalf, any service and consequent waiver was ineffective. Whether a Guardian of the Person may sue or be sued on behalf of a ward appears to be an issue of first impression in North Carolina. None of the authority cited by the parties in their briefs speaks directly to the issue, and our own research has failed to unearth any. However, our Supreme Court has held that if a defendant is *non compos mentis*, he must defend by "general or testamentary guardian if he has one within the state, and, if he has none, by a guardian ad litem to be appointed by the court." *Hood v. Holding*, 205 N.C. 451, 453, 171 S.E. 633, 634 (1933). We note that defendant Mason had no general or testamentary guardian, and no guardian ad litem was ever appointed by the court.

We further note that the *Hood* holding is supported by the current statutory scheme. The statutes governing general guardians specifically grant general guardians the power to undertake and defend legal actions on behalf of their wards:

In the case of an incompetent ward, a general guardian or guardian of the estate has the power to perform in a reasonable and prudent manner every act that a reasonable and prudent person would perform incident to the collection, preservation, management, and use of the ward's estate to accomplish the desired result of administering the ward's estate legally and in the ward's best interest, including but not limited to the following specific powers: . . .

(3) To maintain any appropriate action or proceeding to recover possession of any of the ward's property, to determine the title thereto, or to recover damages for any injury done to any of the ward's property; also, to compromise, adjust, arbitrate, sue on or defend, abandon, or otherwise deal with and settle any other claims in favor of or against the ward.

N.C. Gen. Stat § 35A-1251 (2005). By contrast, the statute dealing with Guardians of the Person confers no power to maintain action, only stating that such a Guardian may confer such consent as necessary to maintain a service:

§ 35A-1241. Powers and duties of guardian of the person

(a) To the extent that it is not inconsistent with the terms of any order of the clerk or any other court of competent jurisdiction, a guardian of the person has the following powers and duties: . . . .

(3) The guardian of the person may give any consent or approval that may be necessary to enable the ward to receive medical, legal, psychological, or other professional care, counsel, treatment, or service. The guardian shall not, however, consent to the sterilization of a mentally ill or mentally retarded ward unless the guardian obtains an order from the clerk in accordance with G.S. 35A-1245. The guardian of the person may give any other consent or approval on the ward's behalf that may be required or in the ward's best interest. The guardian may petition the clerk for the clerk's concurrence in the consent or approval.

Under the doctrine *inclusio unius est exclusio alterius* ("The inclusion of one is the exclusion of another." *Black's Law Dictionary* 763 (6th ed. 1990)), the legislature's decision to confer the power to maintain an action on a general guardian, but not a guardian of the person, implies that the latter lacks such power. This is also an implied requirement of our Rules of Civil Procedure which impose the

requirement of appointment of a guardian *ad litem* where no general or testamentàry guardian has been appointed. *See* N.C. Gen. Stat. § 1A-1, Rule 17(b)(2) (2005) ("In actions or special proceedings when any of the defendants are infants or incompetent persons, . . . they must defend by general or testamentary guardian, if they have any within this State or by guardian ad litem appointed as hereinafter provided.") Therefore, we must conclude that defendant Mason was neither properly sued nor served in the absence of a guardian *ad litem* or general guardian, and set aside the verdict against her on that basis.

**[2]** Turning to defendant Campbell, defendants argue that the trial court erred in granting the plaintiffs' motion for sanctions against defendants by barring defendants from denying liability, and limiting the trial to damages. We agree.

Plaintiffs argue that the entry of default against the defendants was based on their failure to file a responsive pleading to the Amended Complaint. However, the transcript clearly reveals that the issue of liability was decided based on defendant Campbell's failure to attend her scheduled discovery deposition. At the time in question, plaintiffs' counsel told the trial court:

Plaintiff Counsel: We would ask the court to enter a judgment against her [defendant] as to liability and proceed only on damages. That would be our request for—*an appropriate response for not participating in her deposition.* . . .

Trial Court: The Court will allow the motion of the plaintiff as to liability and will try this matter on the question of damages, and finds that the plaintiff [sic] received notice of the deposition and for whatever reason chose not to appear at the deposition and made no appearance at the deposition following due and proper notice of the deposition. So we'll try the matter only on the question of damages. . . . Ma'am, I don't know if you understand what's going on or not, but liability is no longer an issue, the Court having decided that that *is a proper determination for the Court to make as sanctions for your failure to appear for the deposition.*

(Emphasis added). The above exchange makes clear that defendants' denial of liability was stricken based solely for defendant Campbell's discovery violations, and not by reason of the earlier entry of default. Having asserted only that ground in their arguments to the trial court,

plaintiffs are estopped from raising an alternative argument before this Court. "Our Supreme Court has long held that where a theory argued on appeal was not raised before the trial court, the law does not permit parties to swap horses between courts in order to get a better mount in the appellate courts." *State v. Holliman*, 155 N.C. App. 120, 123, 573 S.E.2d 682, 685 (2002) (citation omitted).

Therefore, we review the propriety of striking the defendants' defenses as a sanction for the discovery violation. This Court has recently reaffirmed "that trial courts are not without the power to sanction parties for failure to comply with discovery orders." *Harrison v. Harrison*, 180 N.C. App. 452, 456, 637 S.E.2d 284, 288 (2006). Striking of defenses or counterclaims is an appropriate remedy, and is within the province of the trial court. *Jones v. GMRI, Inc.*, 144 N.C. App. 558, 565, 551 S.E.2d 867, 872 (2001). This Court will not disturb a dismissal absent a showing of abuse of discretion by the trial judge. *Benton v. Hillcrest Foods, Inc.*, 136 N.C. App. 42, 524 S.E.2d 53 (1999). However, if the trial court chooses to exercise the option of striking a party's defenses or counterclaims, it must do so after considering lesser sanctions. *See In re Pedestrian Walkway Failure*, 173 N.C. App. 237, 251, 618 S.E.2d 819 (2005); *Goss v. Battle*, 111 N.C. App. 173, 176, 432 S.E.2d 156, 159 (1993).

An examination of the transcript reveals that the trial court did not consider any lesser sanctions before striking the defendants' defenses on the issue of liability. The trial then proceeded on the sole issue of damages. Therefore, we are compelled to set aside the trial court's order striking defendants' defenses. The judgment is thus vacated, and the case remanded to the trial court for proceedings consistent with this opinion.

Judgment vacated; Remanded.

Judges WYNN and GEER concur.